UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

CIVIL ACTION NO. 3:21-CV-30

Charles Godlove, Pro Se
Apartment 131
200 Woodbury Ave
Martinsburg, WV 25404

      Plaintiff

V.

Humphrey Management, et al
Frank Fadula, VP, Operations
10220 Old Columbia Road, Suite M
Columbia, Maryland 21046

Beth Hooper, Owner
Karen Stephenson, Certified Manager
Stephen Nehrt, Certified Manager
Tom Barry, inspector- repairman
200 Woodbury Ave.
Martinsburg, WV 25404

      Defendants

Signed and dated
2-23-2021

**CIVIL COMPLAINT**

HARASSMENT & Violation of US Constitution

JURISDICTION AND VENUE

This Court has jurisdiction because the Defendants actively engage with federal funds and the parties engage in business within this Courts domain must abide by all laws local, state and federal. As the Parties reside and or do business as same. This Court also has jurisdiction pursuant Congress and the United States Constitution.

Now comes Charles Godlove whom states the following.

INTRODUCTION

All property managers are responsible for helping ensure their housing is free from discriminatory harassment of any type, The Fair Housing Act prohibits harassment, retaliation and

1

other types of discrimination in housing. The defendants: Humphrey Management, Frank Fadula VP, Beth Hooper, Karen Stephenson, and Stephen Nehrt, and Tom Barry will be known HEREAFTER as the Defendants and Charles Godlove, resident to be known as the Plaintiff whom has resided at the current address for 65 months and has frequently requested assistance with housing.

Acting in concert the Defendants have deprived with a pattern of unlawful harassment causing years of emotional distress inflicting dangerous hypoxia for this disabled Plaintiff. And denying the Plaintiff of his lawful rights with fallacious violations and lawless rules and dangerous actions constituting harassment with malice. Thus the Plaintiff alleges that the Defendants did knowing and willfully engages in pattern of habitual harassment in these regards.

In the spring of 2016 the local manager was informed of ADA deficiencies. The plaintiff was told repairs were coming in May 2016 it was announced a complete repaving of the parking lot was to come and that the signage was with in the city code but budget restraints hindered that plan per manager. Residents and guests continued to use the provided parking area, often fraudulently making hardships of the Plaintiff. AND the Defendants using federal Monies knowingly flouted their fiduciary responsibilities and mandated requirements.

During these early years harassment began.

In October of 2016 another new local manger was advised of non-compliant resident parking and signage, it was requested by the Plaintiff that the Defendants all read the Martinsburg city code and state code used for compliance of all laws regarding accessible parking spaces. As the enforcement was legally impossible WITHOUT proper signage. No action was taken again.

January 2017, Lease violation #1 Penny Stitley, manager knew the Plaintiff was entitled to use accessible parking but pursued a lease violation and with no knowledge of the appeal process provided per CFR for the Plaintiff's defense. Without just cause and building on long-term more reprisals have followed. Three violations will force eviction of this tenant.

Spring of 2018 or there about the Nehrt supervised repairs to the building without permits, approvals or

2

Inspections by the city. These structural repairs should have not been allowed as it made for dangerous life and building safety issues. The Defendants actions were unchallenged by the building department as no permit was issued and the work covertly completed.

Believing to be successful in their aforementioned illegal action, pervasive harassment followed.
 Or about October 2019. The managers claimed building was not being used as designed twenty plus years ago and told residents entry restrictions as safety issues were never addressed from the original Certificate of Occupancy. And new barriers were coming to limit egress when new aesthetic designs were chosen for all ground level units with patio egress. This false claim left unchallenged would have prevailed as the Defendants failed to seek approval prior to announcing the duplicitous plan. Here it was seen that the plan was to harass Plaintiff with mobility issues with a new restriction. With a falsity to insure a single monitored entry point creating a hardship for the Plaintiff walking distance. That action was challenged with cites from the building code and the fallacious attempt by managers who knew or should have known the protocol of building construction was thwarted by the Plaintiff's inquiry. The managers retreated from their unlawful attempt and announced residents could use the building as approved in 1993 and they could freely enter and exit building. And the matter concluded with a retraction for continued use as originally approved. Plaintiff was instrumental with supporting arguments hindering the idea of a single point of entry, creating ire for the Defendants. Nehrt had previously supervised non-permitted structural changes creating an unsafe condition to twenty five percent of the units of which is currently review by the city officials. The disregard for life is the underlayment for harassment and thus Defendants placed themselves above the law.

The Plaintiff had for years requested the apartment be painted as it had not been prepared prior to occupancy.

A year later September 25, 2020 the unit was poised for painting. A lease violation was served for telling the repairman to get out as his conduct was presented life threatening danger. Barry, with wanton disregard for life and arriving before sunrise and as the un-medicated plaintiff awoke for morning treatments and believing Barry was removing window shades and lamp globes from the bedroom area, but was actually

3

dismantling the medical station set up with breathing equipment and prescriptions for the Plaintiffs morning need and disconnected the power and pump then placing all in a scrambled pile needlessly five feet away. Barry than ordered the plaintiff from the apartment without delay. Stephenson followed up and issued a lease violation for the most natural of responses due to the life threatening action taken by Barry. Earlier that week Barry stated he was entertained by disconnecting his wife's friends oxygen line.

The Defendants denied the Plaintiffs' 6th Amendment right to the cross-examination of Barry, Stephenson and Nerht as provided under Appeal rule. Furthering the claim of harassment with malice toward the Plaintiffs' and violation of civil rights.

In a well-planned operation a faulty box fan had been delivered by Barry days before painting. This staged event by the team with the seeding of faulty equipment and early morning arrival with willful disregard for the Plaintiffs' safety and health. As a discarded box fan was retribution by Barry for an earlier matter November 2018 regarding another noisy fan, in an act of dominance and to cause harm. A few days later Barry issued still another fan of good condition to a neighbor and he did not claim the faulty fan he had delivered to the Plaintiff. Here Barry the repairman knew of the Plaintiffs' dire need and knew of the danger for its deployment and acted with hostility.

On October 25, 2020, a third lease violation was issued for worthless box fan claiming it as company property and damaged by the Plaintiff. Barry had delivered a dangerous appliance. It was a fire hazard and great annoyance due to the melted impellers noise; flames could have erupted at any time. Stephenson and Barry had left the fan unattended in the freshly painted apartment. The team and others could hear the uncharacteristic sound coming from the fan and left the overheated fan unattended until the plaintiffs' return home to hear the danger as Stephenson and repairman had departed for the day. With dire need for ventilation as the disabled plaintiff suffers from toxic air and had to summon assistance from a neighbor who also noted the fan. Barry and others clearly knew of the medical need as the fan was to remove paint fumes from the newly painted apartment. And then a month later the unclaimed fan was returned by the plaintiff as it was abandoned and out of an abundance the power cord severed for life and building safety. It was unfit for use. Stephenson demanded payment for the faulty fan and would not test the fan as requested for safe use or answer any requests on the matter but payment was paid to escrowed fund.

Due to the multiple lease violations and at the request of the Defendants the violations were merged prior to Appeal process (CFR 3560.160) established by the USDA, Tenant Grievance & Appeals Procedure. The appeal process is well structured for fairness and with defined time lines and formulas which Fadula was aware of including the assignment of the hearing officer and he knew or shown have known the responsibly of his office to provide pursuant to the Agency with oversight to ensure the appeal process was followed. The Defendants chose not to follow the established guidelines and chose a loan officer to adjudicate the Appeal thus ignoring the established protocol.

The Hearing officer is to be selected by the Agency not the Plaintiff or the Defendant. However the Defendants failed to request the hearing officer or call witnesses or any testimony as supported and denied the Plaintiffs' constitutional rights as found in the 6th Amendment inflicting further fear of eviction and or the lose of safe habit. And here the Defendants chose a company loan officer decide the appeal without witness cross exam or any knowledge whatsoever to the Plaintiff. The Defendants' ruling is capricious, and vindictive as well as prejudice, causing emotional distress for this Plaintiff.

And then on February 1, 2021 the managers in a monthly forum announced residents must obey the Rules

*" The next storm will result in towing as we have provided ample warning, instructions and guidance residents on where to move vehicles for inclement weather. We cannot afford to call the vendor back repeatedly because residents refuse to follow the rules:"*

That afternoon the plaintiff replied with cite of municipal law, whereas vehicles displaying Accessible permits are permitted to unlimited access to all parking spaces. The only response from Stephenson on Feburary 8 ,*" More snow is to come later this week. Keep an eye on the weather reports and don't forget to move vehicles according".*

Here managers ignore the needs of the plaintiff. And lawlessly impose a rule that creates hazardous passage.

The mayhem is harassing for the disabled Plaintiff and offers no exception as provided by local and state law. The managers have hijacked the protected need of the disabled Plaintiff. And the Defendants being a purveyor of subsidized housing knew or should have known the duties required when receiving federal funds. Again harassment of the Plaintiff has caused continued emotional distress with careless disregard. The Plaintiff is terrorized by managers who willing display power erroneously and capriciously and to harass with lawless claims to control with fear thus inflicting suffering for the Plaintiff.

## Summary

The Defendants have used their power and privilege to herd and harass to incite fear with malice leading to eviction if accumulated violations. October 2020 a written request was mailed to Hooper and managers it was requested that the dumpster fire be extinguished and another request at the informal meeting with Nehrt, November the Plaintiff requested the violations be vacated, the Defendants chose to deny and move forward with the Appeal. As the Appeal process permitted cross exam of witnesses under the 6th Amendment. And as the cross-examination would have revealed the ominous side of the Defendants behavior. Further the Defendant also claimed no renewal of lease, causing fear of eviction as in Nehrt' statement, "We don't have to renew your lease".  And the lease violations when challenged with factual documents provided by the Plaintiff, the Defendants chose to no longer pursue, displays the falsity of their actions. The campaign by the Defendants to score lease violations has collapsed and exposing the overt harassment.

Here Fadula, in concert with managers denied the Plaintiff's Constitutional rights as his office was fully engaged with the Appeal process and knew his duties. AND have failed to protect and provide as their primary duty while providing sponsored housing. The wild behavior is unsettling and causes needless anxiety and other difficulties culminating in emotional distress. This emotional distress relates to the depression and hopelessness, anxiety driven hypoxia and fear, loss of a safe home and a endless need to defend by law for the Plaintiff.

    (1) The Plaintiff now DEMANDS undisclosed amount for compensatory expenses and THREE HUNDRED THOUSAND DOLLARS punitive damages for the emotional distress caused by the Defendants actions.
    (2) Grant the Plaintiff the relief and other such expenses as the Court may see fit and the any costs the Court may have related to this matter in payment by the Defendants.

    Respectfully,